**UNITED STATES of America,**
**Appellee,**

v.

**CHIN DAN FOOK, a/k/a George Young,**
**Appellant.**

**No. 641, Docket 33441.**

United States Court of Appeals
Second Circuit.

Argued June 11, 1969.

Decided July 15, 1969.

H. Elliot Wales, New York City (Gilbert S. Rosenthal, New York City, on the brief), for appellant.

Abraham D. Sofaer, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Jack Kaplan, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The defendant, Chin Dan Fook, a/k/a George Young, was charged in a one-count indictment with the illegal possession of heroin in violation of 21 U.S.C. §§ 173, 174. A pre-trial motion to suppress was denied by Judge Weinfeld, and the case was tried without a jury to Judge MacMahon, who found the defendant guilty and sentenced him to the mandatory minimum term of five years imprisonment. On appeal the only question is whether there was probable cause to sustain the arrest and incidental search in this case. Since we believe that there was ample probable cause, we affirm.

The defendant was arrested by narcotics agents on the basis of a tip given by an informant previously unknown to them. The informant told the agents that one Gordon Brindell was selling narcotics from an apartment in Chinatown,

and that Brindell was being supplied with narcotics by a 50-year-old Chinese man who called himself George Young.[1] The supplier's Chinese name, the informant said, was Chin Dan Fook. The informant told the agents that he had previously bought narcotics from both Fook and Brindell, and said that Fook supplied Brindell at the Chinatown apartment at least twice a day, usually at noon and again at midnight. The informant also said that occasionally Fook would make an unscheduled visit to the apartment when it appeared that Brindell had run out of stock. According to the informant, persons purchasing narcotics from Brindell would call ahead from a nearby telephone booth and then come to the apartment to be supplied.

On January 4, 1968, the agents established a surveillance of Brindell's apartment and observed an addict named Nam purchase a small quantity of narcotics from Brindell. When the agents apprehended Nam, he told them that Brindell regularly supplied him and other addicts with narcotics, and said that Brindell in turn was supplied by a "Mr. Young." On January 9, the informant telephoned the agents and told them he had just spoken to Fook. The informant said that Fook had already made one delivery of narcotics to Brindell that day, and quoted Fook as saying that he "would be back" later that night. The agents again established a surveillance of Brindell's apartment, and spent the early part of the evening watching Brindell transact business in precisely the way that the informant had described. Shortly after midnight Fook arrived by taxi, and Brindell called down from a window, "Come on up, George, come on up." At this point the agents arrested Fook, and when they searched him they found a large quantity of heroin hidden in a pack of cigarettes taped inside his umbrella.

The defendant makes much of the fact that the informant was not of proven reliability, and asks us to conclude from this single fact that the informant could not possibly give reliable information. Even though the informant was not of proven reliability, compare McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), we cannot agree that probable cause is to be determined simply on the basis of the informant's prior reliability, especially where, as here, there was substantial corroboration of the informant's story. The test for determining probable cause, of course, is to ask whether a reasonable man would believe that a crime had been or was being committed, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and on the facts here we believe that there was sufficient evidence to support a finding of probable cause at the time of arrest.

Unlike Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), where there was no way of determining whether the source was "credible" or his information "reliable," and unlike Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), where the application for the search warrant did not recite that "the informant personally observed Spinelli at work or that he ever placed a bet with him," the circumstances here were plainly sufficient to establish the reliability of the informant.[2] He had previously purchased narcotics from both Brindell and Fook, he had observed the twice-daily visits by Fook, and he was able to describe with extraordinary accuracy the procession of addicts from the downstairs telephone to Brindell's apartment. There was also the undisputed fact that Fook sold narcotics in the past, and as the Supreme Court has held, this may make the informant's report "much less subject

---

1. When they checked their files, the agents found that there was a George Young with the Chinese name of Chin Dan Fook, and that he had several prior narcotics convictions and arrests. The informant was able to identify Fook from a photograph in the files.

2. While *Aguilar* and *Spinelli* involved the question whether there was probable cause for a search warrant to issue, the answer requires basically the same analysis as that demanded in the case of an arrest without a warrant.

'to skepticism than would be such a charge against one without such a history." Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In sum, we think that the informant gave a sufficient statement of the underlying facts and circumstances for his conclusion that Fook was selling narcotics through Brindell, and we believe that the agents could reasonably infer that the informant had gained his information in a reliable way, particularly since much of the informant's story was overwhelmingly and independently corroborated by the agents during their surveillance of Brindell's apartment.

Assuming *arguendo* that the agents would have been unable to obtain a search warrant on the basis of the informant's statements *alone*, we believe that the surveillance produced additional information which, when taken together with the informant's statements, established probable cause for the arrest. Perhaps the agents could not say with absolute certainty that the defendant would be delivering narcotics to Brindell this particular night, but this was not necessary. "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Spinelli v. United States, *supra* 393 U.S. at 419, 89 S.Ct. at 590.

The judgment is affirmed.