**UNITED STATES of America,
Appellee,**

v.

**Jose VASQUEZ, Appellant.**

**No. 706, Docket 33987.**

United States Court of Appeals,
Second Circuit.

Argued May 22, 1970.

Decided July 8, 1970.

---

**616**

Thomas D. Edwards, New York City, for defendant-appellant.

Sterling Johnson, Jr., Asst. U. S. Atty. (Whitney North Seymour, U. S. Atty., for the Southern District of N. Y., Harold F. McGuire, Jr., Jack Kaplan, Asst. U. S. Attys., on the brief), for appellee.

Before SMITH and FEINBERG, Circuit Judges, and TENNEY, District Judge.*

FEINBERG, Circuit Judge:

Jose Vasquez appeals from a judgment of conviction after a jury trial in the United States District Court for the Southern District of New York, Harold R. Tyler, Jr., J., on two counts of violation of 21 U.S.C. §§ 173, 174 (illegally imported cocaine) and one count of conspiracy to violate 26 U.S.C. §§ 4705(a), 7237(b) (transferring cocaine without a written order form). Vasquez received concurrent sentences of ten years on each substantive count and five years on the conspiracy count. We reverse and remand for a new trial on the substantive counts and affirm on the conspiracy count.

Appellant was indicted with two co-defendants, Carlos Smart and Enrique Kremen. Kremen's trial was severed, but Smart was tried with appellant. The facts underlying appellant's conviction are not complicated: In December 1968, an undercover agent of the Bureau of Narcotics and Dangerous Drugs was introduced by an informer to Smart. Smart apparently told the agent that he could procure Bolivian cocaine, naming a price of $12,000 per kilogram delivered in New York. The agent expressed willingness to do business, and received a sample of the merchandise.

Later that month, the agent again met Smart, who stated that the price had risen to $13,000. Smart and the agent went to an address in Manhattan. The agent waited in the car, while Smart entered an apartment in the building. When Smart returned, he informed the

* Of the Southern District of New York, sitting by designation.

agent that the cocaine had been delivered and that all that was necessary was for his associates to come from Queens to "finalize" the transaction.

The agent returned later that night and entered the apartment. Smart, Kremen, and appellant were all present; Kremen apologized for the delay, stating that it was his fault. The agent was directed to a couch, on which rested two bags of white powder, subsequently established to be 831 grams of cocaine plus some adulterants. Also on the couch were appellant's suit jacket and overcoat. At this point, more agents arrived and placed the three defendants under arrest. Appellant, who apparently had only limited command of English, asked for his jacket, muttering "coat" and "cold"—the only words he uttered during the entire encounter. His jacket was subsequently searched and found to contain 1.3 grams of cocaine in the breast pocket.

The substantive counts on which appellant was indicted were Counts Three and Four. The 1.3 grams formed the basis of Count Three, and appellant's alleged constructive possession of the 831 grams formed the basis of Count Four. On both counts the jury was instructed that it could convict on the basis of the statutory presumption of importation and knowledge of importation from proof of possession contained in 21 U.S. C. § 174.

### I.

The case was tried before the decision in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and the jury was allowed on Count Three to infer importation and knowledge of importation from possession alone. *Turner* declared the presumption unconstitutional with respect to the small quantity of cocaine which formed the basis of this count. Therefore, a new trial on Count Three is required. See United States v. Jenkins,

427 F.2d 149 (2d Cir. 1970) (per curiam). The Government makes an ingenious argument to sustain the conviction on this count on the particular facts of this case. *Turner* left open the validity of the presumption for a large batch of cocaine like the one that formed the basis of Count Four; if that count were valid then the jury could also have inferred that Vasquez took the small amount from the large amount, and thus that his presumed knowledge of the presumed importation of the large amount carried over to the small amount. Without reaching the validity of the section 174 presumption for a large quantity of cocaine or the logic behind the Government's argument, it is sufficient to note that the jury was not instructed to draw the inference of importation only if it found the small amount to have been taken from the larger. Therefore, the verdict cannot be sustained on such an implied finding.

### II.

Appellant presents two serious challenges to his conviction on Count Four. On this count, the jury was allowed to find that appellant was constructively in possession of the 831 grams of cocaine on the sofa; the Government also relied on the section 174 presumption. Appellant challenges both the sufficiency of the evidence to support any inference of possession on his part and also the validity of using the presumption.

The evidence establishing appellant's constructive possession of the 831 grams was not overwhelming. The Government points to the following: Appellant was present in the apartment at the crucial stage of the transaction; the large amounts of cocaine were in plain view; appellant's overcoat and jacket were next to the cocaine on the sofa; Kremen's statement, in appellant's presence, that the delay was his (Kremen's) fault; and appellant's awareness that it was cold outside.[1] To this we would add

---

1. Apparently this is relied on to show that appellant had just arrived with Kremen, although knowledge that it was a cold night in December would not depend upon having just come in from the cold.

appellant's obvious unfamiliarity with English, which might have some marginal weight in the context of a scheme to obtain cocaine smuggled in from Bolivia.[2] Appellant argues that all of this added up to no more than his mere presence in the room, insufficient to show dominion and control over the cocaine.[3] Appellant argues that his presence could have been explained in a number of ways; e. g., he might have been a purchaser who had nothing to do with the large amount of cocaine. We think, however, that the jury could have found that the large amount of cocaine would only have been exposed to someone closely involved with the transaction and that Kremen's statement would only have been made in front of an insider. Admittedly, the issue is close, but we believe that just enough was shown to justify submission to the jury of the issue of possession. Even if that is so, however, there remain problems with the presumption of illegal importation and appellant's knowledge thereof, to which we now turn.

◼ In *Turner, supra,* the Court left open the question whether the section 174 presumption might be rational when applied to large quantities of cocaine, stating, 396 U.S. at 419, n. 39, 90 S.Ct. at 654 n. 39:

> Since the illegal possessor's only source of domestic cocaine is that which is stolen, the United States urges that the § 174 presumption may be valid with respect to sellers found with much larger amounts of cocaine than Turner had, amounts which, it is claimed, are too large to have been re-

moved from legal channels and which must therefore have been smuggled. * * * We find it unnecessary to deal with these problems and postpone their consideration to another day, hopefully until after the facts have been presented in an adversary context in the district courts.

The Government urges us to affirm the validity of the presumption on the basis of statements concerning the cocaine traffic made in affidavits now submitted to us. We decline to do so. As the Supreme Court recognized, the best test of the rationality of the presumption as applied to Count Four will be after an adversary hearing in the district court.[4]

◼ There is a question, however, whether more than that is required. Obviously, if the presumption is held invalid, a new trial would be necessary at which the Government could attempt to prove, without resort to the presumption, that the cocaine was illegally imported and that appellant knew it. But if the presumption is sustained, it is arguable that a new trial would not be required, since its use on Count Four would have been retroactively approved. However, even if the presumption were to be held valid when applied to the large amount of cocaine involved here, a question as to which we express no opinion, a new trial would still be necessary. The reason is that the jury would have to be told that in order to make the inference allowed by the presumption, it would have to find that appellant knowingly possessed cocaine in a sufficiently large amount. In other words, since it is constitutionally impermissible to infer

---

2. Thus, if the cocaine were alleged to have come from China, it would be relevant that appellant and the others were Chinese.

3. Appellant cites, for example, United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) ; Bettis v. United States, 408 F.2d 563 (9th Cir. 1969).

4. We note that the district court, in deciding the validity of the presumption, may have to deal with the question whether the presumption must be judged only by a "more-likely-than-not standard * * * or by the more exacting reasonable doubt standard." See Turner v. United States, *supra*, 396 U.S. at 416, 419, 90 S.Ct. at 654; Leary v. United States, 395 U.S. 6, 36 n. 64, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

knowledge of importation of cocaine from possession of a small amount, the Government must prove—and the jury must find—that the defendant knowingly possessed an amount justifying use of the presumption. Because the case was tried before *Turner*, that was not done here. Accordingly, a new trial on Count Four is also required.

### III.

Finally, appellant attacks his conviction on the conspiracy count, Count One. First, he argues that the evidence, independent of statements of alleged co-conspirators made outside of his presence, is insufficient to show his participation in a conspiracy. Second, he alleges that there was no evidence from which it could be inferred that one of the purposes of the conspiracy to which he subscribed was to transfer cocaine without an order form. The latter point is without merit; if there was a conspiracy at all, the fact that it was a conspiracy to make a clandestine transfer of cocaine would justify an inference that an order form would not be demanded of the buyer.

The other issue is more difficult. The evidence of appellant's connection with the conspiracy was not strong. It was essentially the same as that offered to show constructive possession of the cocaine, which we have already discussed. However, we conclude that the evidence sufficed to get to the jury on this issue as well. The jury was not told that it could use the section 174 presumption on Count One and the sentence received was the minimum of five years. Having reviewed the record, we see no reason why the conviction on this count should be set aside. Cf. United States v. Jenkins, *supra*; United States v. Febre, 425 F.2d 107 (2d Cir. 1970).

Judgment of conviction on Count One affirmed; on Counts Three and Four reversed.